2013 OK 24

**W.R. ALLISON ENTERPRISES, INC., a corporation, on Behalf of Itself and All Others Similarly Situated, Plaintiffs/Respondents,**

v.

**COMPSOURCE OKLAHOMA, Defendant/Petitioner.**

**No. 111,118.**

Supreme Court of Oklahoma.

April 9, 2013.

---

George W. Dahnke, Patricia L. Franz, Oklahoma City, Oklahoma, for defendant/petitioner.

Duke Halley, John Walkup, Oklahoma City, Oklahoma, for plaintiffs/respondents.

TAYLOR, J.

¶1 We previously granted the defendant/petitioner's, CompSource Oklahoma's (CompSource), petition for certiorari review of a first impression question of law: Whether 85 O.S.2001, § 67.1[1] applied to all cancellations of workers' compensation insurance, both insured-initiated and insurer-initiated. We conclude the longstanding construction and application of § 67.1 of Title 85 of the Oklahoma Statutes by the Oklahoma Insurance Department required CompSource to make a *pro rata* refund of unearned premium only if CompSource initiated the cancellation of a workers' compensation insurance policy, and we find the appellate record does not establish any cogent reason why this Court should not defer to that longstanding application. We hold that § 67.1 of Title 85 of the Oklahoma Statutes did not require CompSource to make a *pro rata* refund of unearned prepaid premium to W.R. Allison Enterprises, Inc. (Allison).

## I. Facts and Procedural Background

¶2 The material facts are not disputed. Allison is a small business Oklahoma corporation operated by its sole owner. Allison hired an employee in early 2009 and secured workers' compensation and employers' liabili-

---

1. The 2011 Legislature repealed § 67.1.2011 Okla.Sess.Laws, ch. 318, § 87.

ty insurance from CompSource. The policy provided workers' compensation and employers' liability coverage for Allison's employee for a period from February 3, 2009, to February 1, 2010. Allison prepaid the estimated annual premium in the amount of $801.00.

¶ 3 The employee worked for Allison until March 19, 2009. Allison asked its insurance agent to cancel the workers' compensation insurance policy. By letter dated April 8, 2009, CompSource acknowledged the cancellation request and advised that it would issue a ten-day notice of cancellation[2] on a short rate basis[3] in conformance with the insurance policy. CompSource prepared a final audit report for the pay period from February 3, 2009 to April 22, 2009, calculating the gross premium to be $491.00, the short rate cancellation penalty to be $244.00, and a catastrophe premium to be $45.00 for a total of $780.00. CompSource subtracted the $780.00 from the estimated prepaid $801.00 annual premium and refunded the remainder as the unearned premium calculated on a short rate basis.

¶ 4 The insurance policy, at Part 6(D)(1), expressly permitted Allison's cancellation: "You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect." At Part 5(F)(2), it provided for a short rate penalty charge if Allison cancels the policy:

> If you cancel, final premium will be more than pro rata: it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

At Part 5(F)(1), the insurance policy provided for a *pro rata* refund of the prepaid premium if CompSource cancelled the policy,[4] and at Part 6(D)(4), it provided that "any conflict with a law that controls the cancella-

tion of the insurance in this policy is changed by this statement to comply with that law."

¶ 5 Allison took the position that the short rate penalty charge conflicted with 85 O.S. 2001, § 67.1 which expressly required the insurance company to refund a *pro rata* share of the prepaid premium if it canceled a policy and that the policy's short rate penalty provision was changed, by operation of law, to comply with § 67.1. Allison filed suit against CompSource on behalf of itself and other similarly situated employers to recover the short rate penalties charged by CompSource. In its third amended petition, Allison alleged CompSource's refusal to return the $244.00 short rate penalty charge constituted a breach of the insurance policy as impliedly amended by § 67.1. Allison also alleged that when § 67.1 was enacted in 1949, insurance companies routinely charged the short rate penalty upon an insured-initiated cancellation but not upon an insurer-initiated cancellation in violation of the mutuality of obligation between insured and insurer; that the purpose of § 67.1 was to forbid the short rate penalty charge; and that § 67.1 accomplished nothing if the short rate penalty continued. Allison further alleged that the class of insured employers which have been charged the short rate penalty is so numerous that joinder of all class members is impracticable and asked that the class be certified.

¶ 6 Allison asserted that insurance policies are canceled by CompSource whether the cancellations were insured-initiated or insurer-initiated, and that § 67.1 applied to all cancellations by CompSource. Allison moved for summary judgment on the issue of whether the short rate penalty charged by CompSource when it canceled policies was unlawful under § 67.1.

¶ 7 CompSource filed a response to Allison's motion for summary judgment and a

---

**2.** Pursuant to 85 O.S.2001, § 64(G), the insurer must file the notice of intent to cancel the insurance with the Administrator of the Workers' Compensation Court and serve a copy of the notice on the employer at least ten days prior to the cancellation date

**3.** Short rate basis for calculating the amount of the unearned premium to be refunded is a penal-

ty method of calculation. The insurer keeps a percentage of the unearned premium determined from a short rate cancellation table when the insured initiates the cancellation.

**4.** Part 5(F)(1) of the policy provided: "If we cancel, final premium will be calculated pro rata based on the time this policy was in force."

counter-motion for summary judgment. CompSource took the position that the short rate penalty calculation of the amount of prepaid premium to be refunded when an insured requested cancellation of an insurance policy is a longstanding industry practice historically approved by the State Insurance Commissioner, and that the courts should defer to the longstanding application of a statute by the state agency vested with its enforcement. In support of its position, CompSource alleged that it is a member of the National Council on Compensation Insurance (NCCI), a licensed advisory and rating organization in the State of Oklahoma; that it utilizes the Basic Manual for Workers' Compensation and Employers' Liability Insurance published by NCCI; that NCCI submits its short rate cancellation computation tables and procedure to the Oklahoma Insurance Department for approval; and that, for at least the past thirty years, CompSource has utilized a standard insurance policy form developed by NCCI which contains a provision for prepaid premium refunds calculated on a short rate basis upon insured-initiated cancellations. CompSource submitted documentary evidence to show the truth of these allegations, and Allison did not dispute the allegations. CompSource also argued that, on its face, § 67.1 applied only to insurer-initiated cancellations.

¶ 8 The trial court granted partial summary judgment in favor of Allison, ruling: that 85 O.S. § 67.1 applies to all cancellations, whether instituted by the insured or the insurer and, therefore, that CompSource Oklahoma was required to make a *pro rata* refund of unearned premium in connection with all cancellations while the statute was in effect, including the cancellation requested by Plaintiff W.R. Allison. The trial court overruled CompSource's counter motion for summary judgment. The trial court certified the interlocutory partial summary judgment for appeal, finding there is no existing Oklahoma authority resolving this question of law and concluding an immediate appeal will best serve the goal of effi-

cient administration of justice and materially advance the ultimate determination of the litigation. 12 O.S.2011, § 952(B)(3). Allison filed a motion for class action certification, and the trial court stayed ruling on the motion pending disposition of this appeal.

¶ 9 CompSource timely petitioned this Court for review of the interlocutory partial summary judgment order,[5] arguing that for more than a century, contracts of insurance have drawn a distinction between cancellations by insurers and cancellations by insureds, citing *Taylor v. Insurance Co. of North America,* 1909 OK 298, 105 P. 354, 138 Am.St.Rep. 906; that the plain language in 85 O.S.2001, § 67.1 extends that section to cancellations initiated by insurers only, citing *Matter of Protest Against Tax Levy of Ardmore Ind. School No. 19,* 1998 OK 43, ¶ 14, 959 P.2d 580, 584; and that the courts must give deference to the Insurance Commissioner's approval of use of the short rate calculations, citing *United Airlines, Inc. v. State Bd. of Equalization,* 1990 OK 29, 789 P.2d 1305, 1311. Allison responded to the petition for certiorari, urging that it be denied until the trial court rules on the class certification. We granted the petition for certiorari review.

## II. Standard of Review

¶ 10 At issue here is the meaning of language in 85 O.S.2001, § 67.1. The meaning of statutory language presents a pure question of law that stands before us for *de novo* review without deference to the lower court. *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–1123.

## III. 85 O.S.2001, § 67.1

¶ 11 Section 67.1 of Title 85 of the 2001 Oklahoma Statutes was enacted in 1949.[6] The 1949 enactment[7] consisted of four sections—the first section provided for a payroll audit and the return of unearned premium if an insurance company canceled a policy, the second made violation of the first section a misdemeanor and provided for punishment by a fine, the third provided for severability,

---

5. Okla.Sup.Ct.R. 1.51, 12 O.S.2011, ch. 15, app. 1.

6. 1949 Okla.Sess.Laws, ch. 3, § 1.

7. 1949 Okla.Sess.Laws, ch. 3.

and the fourth repealed any law that conflicted with the first section. When it was repealed, effective August 26, 2011,[8] the language in the first section of the 1949 enactment, § 67.1, remained the same as originally enacted. Section 67.1 read:

> If any insurance company shall cancel any policy of Workmen's Compensation insurance issued by it upon risks within this state, the premium or consideration therefor, or any part therefor having been actually paid, it shall, within one hundred eighty (180) days after the effective date of said cancellation, make an audit of the payroll of such risk to determine the portion of said premium or consideration which has been earned and the portion thereof which has not been earned, respectively, and furnish a copy of said audit to the policyholder and return, within a reasonable time after the effective date of such cancellation, the unearned portion of the premium or consideration actually paid, said company retaining only the pro rata part thereof.

¶ 12 On certiorari, Allison argues that with the words "insurance company shall cancel" and "retaining only the pro rata part" in § 67.1, the 1949 Legislature intended to mandate an insurance company to refund the prepaid premium on a *pro rata* basis when the insured requested the policy be cancelled. Allison's legislative intent argument is grounded in the 1949 insurance industry custom of calculating prepaid premium refunds on a short rate penalty basis for insured-initiated cancellations and calculating the refund on a *pro rata* basis for insurer-initiated cancellations. Allison asserts that if the 1949 Legislature did not intend to change the industry custom and mandate refund of the prepaid premium on a *pro rata* basis for both insured-initiated and insurer-initiated cancellations, then the statute did nothing.

¶ 13 On certiorari, CompSource argues that the trial court ruling is contrary to the plain meaning of the statutory language, or alternatively, it is contrary to the legislative intent gleaned from the face of the statute. CompSource urges that we need not speculate about legislative intent in § 67.1 because

it unambiguously applied only to insurer-initiated policy cancellations in its opening words—"If any insurance company shall cancel any policy of Workmen's Compensation insurance issued by it upon risks within this state...." CompSource argues that the word "shall" in this phrase is not a mandatory word, rather it concerns future cancellations by insurance companies. CompSource further argues that if we must speculate about legislative intent, then the purpose to be gleaned from the face of the statute is the imposition of the 180-day deadline for the insurer to complete the payroll audit to determine the final earned premium amount.

¶ 14 In reviewing a legislative enactment, we first turn to the plain language of the statute. *Yocum v. Greenbriar Nursing Home,* 2005 OK 27, ¶ 9, 130 P.3d 213, 219. The Legislature is presumed to have expressed its intent in the text of the statute. *Id.* Here, the plain language of the statute addresses situations where the insurance company cancels a workers' compensation insurance policy that covers risk in Oklahoma. Because § 67.1 does not mention insured-initiated or insurer-initiated cancellations, it could be read to apply to both as Allison argues. On the other hand, because it provides for the insurance company to retain only a *pro rata* part, it could be read to apply only to insurer-initiated cancellations which, both Allison and CompSource agree, was the custom in 1949. The parties' arguments bring into focus the ambiguity in the language and the questions of legislative intent: Whether the 1949 Legislature intended this section to apply only when the insurance company decided to cancel the insurance policy or whether the 1949 Legislature intended the statute to also apply when the employer requested the policy be canceled.

¶ 15 The following established rules of statutory construction are applicable. The primary goal in reviewing a statute is to ascertain legislative intent, if possible, from a reading of the statutory language in its plain and ordinary meaning. *State ex rel. Oklahoma State Dept. of Health v. Robertson,* 2006 OK 99, ¶ 6, 152 P.3d 875, 877–878. If

---

8. 2011 Okla.Sess.Laws, ch. 318, § 87.

the meaning of a provision is not clear, the ambiguous terms will be considered in the context of the statute and will be harmonized with other relevant sections. *State ex rel. Oklahoma State Dept. of Health v. Robertson,* 2006 OK 99, ¶ 7, 152 P.3d 875, 878; *Multiple Injury Trust Fund v. Wade,* 2008 OK 15, ¶ 23, 180 P.3d 1205, 1211–1212. The language in the title of a legislative enactment is a proper guide in ascertaining the intent of the statute. *Naylor v. Petuskey,* 1992 OK 88, 834 P.2d 439, 440–441. Deference will be afforded to the long-standing construction of a statute by an agency charged with its enforcement. *United Airlines, Inc. v. State Bd. of Equalization,* 789 P.2d at 1311–312.

¶ 16 Having determined that the plain language of § 67.1 is subject to more than a single interpretation and the words are ambiguous in the context of the statute, we turn to the title of the 1949 legislative enactment. The title of the 1949 legislative enactment read:

> AN ACT relating to the cancellation of Workmen's Compensation policies of insurance, providing for payroll audits and return of unearned premiums, making violation of this Act a misdemeanor, providing punishment therefor, making the provisions hereof severable, repealing conflicting law; and declaring an emergency.

The legislative intent of § 67.1 to provide for payroll audits and return of unearned premiums relating to cancellation of a workers' compensation insurance policies is clearly expressed in the above title. Although the statute expressly allows an insurance company canceling an insurance policy to retain "only the pro rata part" of the unearned prepaid premium, the above title does not mention *pro rata* refund of unearned premium nor does it mention short rate penalty charge. As expressed in the above title, the purpose of § 67.1 was to require insurance companies to timely perform payroll audits to determine the earned premium and to refund the unearned prepaid premiums.

¶ 17 Both the statute and the title to the legislative enactment are silent as to the insurance industry custom of calculating unearned premiums using the short rate penalty calculation for insured-initiated cancellation and the *pro rata* calculation for insurer-initiated cancellation. The parties agree the insurance industry custom of charging the short rate penalty when the insured requested a cancellation of the workers' compensation insurance policy was in place before the enactment of § 67.1. The custom did not change after its enactment in 1949.

¶ 18 The insurance industry's customary short rate calculation for insured-initiated cancellation and *pro rata* calculation for insurer-initiated cancellation continued for six decades after the enactment of § 67.1. The Oklahoma Insurance Department and the Oklahoma Insurance Commissioner continued to approve of the two customary methods of calculating unearned prepaid premiums, the Basic Manual for Workers' Compensation and Employers' Liability Insurance published by the National Council on Compensation Insurance continued to include the short rate cancellation computation tables, and the standard insurance policy form approved by the Oklahoma Insurance Department continued to contain a provision for prepaid premium refunds calculated on a short rate basis upon insured-initiated cancellations.

¶ 19 The longstanding application of § 67.1 by the Oklahoma Insurance Department is not controlling, but it must be given great weight, *United Airlines, Inc. v. State Bd. of Equalization,* 789 P.2d at 1311–1312, and it will not be disregarded or overturned except for a cogent reason. *Oral Roberts University v. Okla. Tax Commission,* 1985 OK 97, 714 P.2d 1013, 1015. We find the ambiguous language in § 67.1 permits the longstanding construction placed upon it by the Oklahoma Insurance Department, and we find no cogent reason in the appellate record to discard or overturn the agency's construction.

¶ 20 The Legislature convened many times since the enactment of § 67.1 and did not express its disapproval of the Oklahoma Insurance Department's continual construction of the statute. We regard the Legislature's silence as acquiescence in or approval of the Oklahoma Insurance Department's construction of the statute. *United Airlines, Inc.,* 789 P.2d at 1311–1312.

## IV.  Conclusion

¶ 21 We reject Allison's assertions that the purpose of § 67.1 was to forbid the short rate penalty charge; that the short rate penalty charge conflicted with 85 O.S.2001, § 67.1; and that the workers' compensation insurance policy's short rate penalty provision was changed, by operation of law, to comply with § 67.1. We conclude that the purpose of § 67.1 was to mandate the insurance companies to perform payroll audits and to return unearned premiums relating to cancellation of workers' compensation insurance policies.[9] We defer to the longstanding construction and application of § 67.1 of Title 85 of the Oklahoma Statutes by the Oklahoma Insurance Department to require a *pro rata* refund of unearned premium only if the insurer initiated the cancellation of a workers' compensation insurance policy.  We also conclude that § 67.1 did not operate to change the short rate penalty provisions in the workers' compensation insurance policy approved by the Oklahoma Insurance Department. We hold that § 67.1 of Title 85 of the Oklahoma Statutes did not require CompSource to make a *pro rata* refund of unearned prepaid premium to Allison.

**CERTIFIED INTERLOCUTORY ORDER REVERSED; CAUSE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

ALL JUSTICES CONCUR.

---

9.  We recently decided CompSource is not a "licensed insurer" as that term is used in § 3639(C) of the Oklahoma Insurance Code, 36 O.S.2001, §§ 101, *et seq.*  *Zaloudek Grain Company v. CompSource*, 2012 OK 75, 298 P.3d 520, (rehearing denied March 25, 2013).  The *Zaloudek* opinion observed that in canceling the workers' compensation liability insurance policy, CompSource made a credit refund pursuant to 85 O.S.2001, § 67.1. *Id.*, 2012 OK 75, at ¶ 3 and n. 3.