2015 OK 6

Peggy HORTON, an individual, Plaintiff/Appellant,

v.

John J. HAMILTON, an individual, and Robin L. Peck, an individual, Defendants/Appellees,

and

Firstar Financial Group of Central Oklahoma, L.L.C., f/k/a First Fidelity Financial Group of Oklahoma City, L.L.C., and Allen C. Enegren, an individual, Defendants.

No. 112,254.

Supreme Court of Oklahoma.

Feb. 10, 2015.

358

Jerry D. Colclazier, Colclazier & Associates, Seminole, Oklahoma, for Plaintiff/Appellant.

P.R. Tirrell, Denton Law Firm, Mustang, Oklahoma, for Defendant/Appellee John J. Hamilton.

Klint A. Cowan, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Oklahoma, for Defendant/Appellee Robin L. Peck.

TAYLOR, J.

¶ 1 The question before this Court is whether the district court erred in granting the defendants' motion for summary judgment based on the expiration of the statutory limitations periods on the plaintiff's claims. To answer that question, this Court must determine when the plaintiff's claims accrued and whether the statute of limitations for each claim ran or was tolled from the accrual date based upon the discovery rule. We hold that the defendants did not submit sufficient evidentiary material to support their arguments as to when the statute of limitations began to run on each claim, and we therefore answer the question in the affirmative.

## I.  FACTUAL ALLEGATIONS

¶ 2 The following facts were alleged by the parties. In April of 2007, Plaintiff, Peggy Horton (Horton), received an unsolicited mailer to attend a retirement seminar sponsored by Firstar Financial Group of Central Oklahoma, L.L.C., (Firstar), a former defendant in the litigation.[1] Firstar owner, John J. Hamilton, and employee Robin L. Peck presented the seminar. The defendants attempted to persuade Horton and others that their savings were not safe in banks; according to the presentation, the only safe investment was the defendants' capital apprecia-

tion bonds that yielded a 60% rate of return. The defendants followed up the seminar with private meetings in Horton's home. On September 18, 2007, Horton wrote a $100,000.00 check to purchase a Life Fund 5.1, L.L.C., Capital Appreciation Bond (the bond). Horton made the check out to A & O Life Funds.

¶ 3 Horton had reservations about the bond's riskiness, but Peck came to Horton's home and convinced her of the investment's safety. Relying on Peck's assurances, Horton did not withdraw her offer to purchase the bond. During that time, the Oklahoma Securities Commission (Commission) also called Horton to inform her that it suspected the defendants of fraud. The bond was issued on October 1, 2007. Horton received the bond on November 21, 2007. Despite Peck's initial reassurances, Horton began requesting her initial investment money back. She also worked with the Commission in the months following her purchase of the bond. It is unknown what information she gleaned from the Commission, but in September of 2009, Horton hired an attorney.

¶ 4 The bond was part of a Ponzi scheme. Horton lost her entire investment when Life Fund 5.1, L.L.C. filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois on September 2, 2009. Horton filed a proof-of-claim document with the federal bankruptcy court on September 15, 2009, detailing the fraudulent sale of her bond.

## II.  PROCEDURAL HISTORY

¶ 5 On December 10, 2009, Horton filed a petition in the district court, asserting claims for the sale of unregistered securities in violation of the Oklahoma Securities Act (count I),[2] the sale of securities by an unregistered broker-dealer or agent in violation of the Oklahoma Securities Act (count II),[3] the sale of securities through misrepresentations or omissions in violation of the Oklahoma Secu-

---

1. Firstar was also frequently known as First Fidelity Financial Group of Oklahoma City.

2. 71 O.S.Supp.2003, § 1–509(B); *id.* § 1–301.

3. *Id.* § 1–509(D); §§ *id.* 1–401(A), 1–402(A). Counts I and II were dismissed by the district

court. In both instances, the district court ruled that counts I and II were barred by the one-year time bar in the Oklahoma Securities Act, citing *id.* § 1–509(J)(1). Horton has appealed neither of these issues to this Court, and these rulings became final.

rities Act (count III),[4] common law fraud (count IV), breach of fiduciary duty (count V), and negligence and gross negligence (count VI).[5]

¶ 6 The defendants jointly filed a motion for summary judgment, contending that Horton's remaining claims (counts III–VI) were barred by their corresponding two-year statutory limitations periods. The defendants presented only six facts they contended were undisputed.[6] They argued that the statutes of limitations started to run on counts III–VI when Horton actively began trying to get her money back from the defendants, but failed to submit evidentiary material to show when Horton knew of or should have discovered the facts underlying her causes of action. Horton did not dispute any of the defendants' facts, but argued that other facts already in the record failed to. establish when the statutes of limitations began to run. The district court agreed with the defendants and granted their motion for summary judgment.

¶ 7 Horton appealed the order granting summary judgment. The Oklahoma Court of Civil Appeals affirmed the district court, ruling that no factual disputes existed in the evidentiary materials as to when the limitations periods ran and that Horton was aware of the defendants' tortious conduct more than two years before she filed her petition. We granted the petition for writ of certiorari.

### III. STANDARD OF REVIEW

■■■ ¶ 8 Summary judgment settles only questions of law. *See Pickens v. Tulsa Metro. Ministry,* 1997 OK 152, ¶ 7, 951 P.2d 1079, 1082. The standard of review of questions of law is *de novo. Id.* Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment will be reversed if reasonable people might reach different conclusions from the undisputed ma-

terial facts or a party is not entitled to judgment as a matter of law. *See Runyon v. Reid,* 1973 OK 25, ¶ 15, 510 P.2d 943, 946. All reasonable inferences are taken in favor of the nonmovant. *Jennings v. Badgett,* 2010 OK 7 ¶ 4, 230 P.3d 861, 864.

### IV. ANALYSIS

■■■ ¶ 9 The primary issue before this Court is whether the defendants submitted sufficient evidentiary material to establish when each of Horton's claims accrued and when the statute of limitations for each of those claims began to run. Our jurisprudence has recognized general rules in this area that govern all civil causes of action. *Consol. Grain & Barge Co. v. Structural Sys., Inc.,* 2009 OK 14, ¶ 9, 212 P.3d 1168, 1171. We begin with the accrual date: "Civil actions can only be commenced ... after the cause of action shall have accrued...." 12 O.S.2011, § 92. The accrual date may be identified by statute, but it can only be present when each element of the cause of action has materialized. *Consol. Grain,* 2009 OK 14, ¶ 9, 212 P.3d at 1171. Generally, the statute of limitations begins to run from the accrual date. *Id.* However, the discovery rule may delay the start of the statute of limitations. *Digital Design Grp., Inc. v. Info. Builders, Inc.,* 2001 OK 21, ¶ 17, 24 P.3d 834, 839 (holding that the discovery rule delays the running of the statute of limitations "until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury").

■■■ ¶ 10 To grant summary judgment on the affirmative defense that a statute of limitations ran on a claim, the evidentiary material must show when the plaintiff knew or in the exercise of reasonable diligence would have discovered the act which gave rise to the claim. *Redwine v. Baptist Med. Ctr. of Okla., Inc.,* 1983 OK 55, ¶ 9, 679 P.2d 1293, 1295. Otherwise, when the statute of

---

4. *Id.* § 1–509(B).

5. In addition to the two parties currently defending this suit, Horton named as a defendant Allen C. Enegren. The record indicates that Enegren died before being served with summons and was never made a party to this case. The district

court also dismissed Firstar as a party during the litigation, and that issue has not been brought before this Court.

6. The six material facts presented by the defendants are discussed in paragraph 14.

limitations begins to run is a question of fact if reasonable people would reach "conflicting opinions thereon." *Id.* Similarly, whether the plaintiff was diligent in ascertaining his or her cause of action is a question of fact for the jury. *Id.* ¶ 8, 679 P.2d at 1295. We now apply these general rules to each of Horton's causes of action to determine if her claims were untimely filed.

## A. The Oklahoma Securities Act

¶ 11 The Oklahoma Uniform Securities Act of 2004 (Securities Act) created mechanisms for private enforcement of civil liability in the sale of securities. 71 O.S.Supp.2003, §§ 1–101 to 1–701. Horton sought relief under the Securities Act by alleging that the defendants made an "untrue statement of a material fact or an omission to state a material fact" in their offer to sell her the bond she purchased in 2007. *See id.* § 1–509(B).[7] The Securities Act identifies the accrual date for its causes of action. For a misrepresentation in Section 1–509(B), a plaintiff's cause of action accrues at the point "a person sells a security . . . by means of an untrue statement of a material fact." *Id.* The Securities Act also sets a statute of limitations for its causes of action. For misrepresentations in the sale of securities, Section 1–509(J)(2) lays out a two-year statute of limitations that only begins to run upon the "discovery of the facts constituting the violation." *Id.* § 1–509(J)(2).[8]

■ ¶ 12 We have not before construed the language of Section 1–509(J)(2). We must begin with the plain language of the statute, *W.R. Allison Enterprises, Inc. v. CompSource Oklahoma,* 2013 OK 24, ¶ 15, 301 P.3d 407, 411, but we also may examine the official comments that accompany the uniform act upon which the Securities Act is based.[9] The plain language of Section 1–509(J)(2) creates only a subjective-knowledge standard—the statute of limitations does not begin to run until a person has discovered the facts constituting the violation. But that is not the intention of the uniform act; the uniform act sought to adopt its statute of limitations with that of federal securities law. Unif. Sec. Act § 509 official cmt. 14. Oklahoma sought to do the same.[10] Courts have construed that time limitation in federal securities law not just to require actual subjec-

---

**7.** The Securities Act provides a civil cause of action for purchasers of securities defrauded by a seller:

A person is liable to a purchaser if the person sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission, and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission. . . .

*Id.* § 1–509(B).

**8.** Section 1–509(J)(2) provides the following time limitation for civil claims under the Securities Act:

A person may not obtain relief:
. . . .
(2) Under subsection B of this section, other than for violation of Section 10 of this act, or under subsection C or F of this section, unless the action is instituted within the earlier of two (2) years after discovery of the facts constituting the violation or five (5) years after such violation.

*Id.* § 1–509(J)(2).

**9.** The Oklahoma Legislature enacted the Securities Act in 2003 based upon the Uniform Securities Act (uniform act) drafted by the National Conference of Commissions on Uniform and State Laws. *See* Stephanie Chapman & Stephen Hetrick, *Oklahoma Uniform Securities Act of 2004,* 57 Okla. L.Rev. 899, 899 (2004); *see also* S.B. 724, 49th Legs., 1st Reg. Sess. (Okla.2003).

We may examine the legislative intent included in that uniform act as long as Oklahoma adopted the identical language of a particular section or the entire act. *See, e.g., Barringer v. Baptist Healthcare of Okla.,* 2001 OK 29, ¶ 7, 22 P.3d 695, 698; *Nat'l Union Fire Ins. Co. v. A.A.R.W. Skyways, Inc.,* 1989 OK 157, ¶¶ 18–19, 784 P.2d 52, 57; *Perkins v. Okla. Tax Comm'n,* 1967 OK 110, ¶ 6, 428 P.2d 328, 329. Oklahoma adopted nearly identical statutory time bars to those proposed in the uniform act. *Compare* Unif. Sec. Act (amended 2005), http://www.uniformlaws.org/shared/docs/securities/securities_final_05.pdf, *with* S.B. 724, 49th Legs., 1st Reg. Sess. (Okla.2003). The only changes the Oklahoma Legislature made to the uniform act's section 509(j) were stylistic.

**10.** *See generally* Chapman & Hetrick, *Oklahoma Uniform Securities Act of 2004, supra,* at 917–18 ("[T]he Oklahoma Act conforms state law with federal statute of limitations for such actions.") (citing 28 U.S.C. § 1658(b) (2000)).

tive knowledge of the facts of the violation, but also to adopt an *inquiry notice* standard. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *Law v. Medco Research, Inc.,* 113 F.3d 781, 785 (7th Cir.1997). The official comment applicable here impresses the same construction for Section 1–509(J)(2)'s limitations' period. Unif. Sec. Act § 509 official cmt. 14. The clock begins to run on a plaintiff's claim after discovery of the facts or " 'after such discovery should have been made by the exercise of reasonable diligence.' " *Id.* (quoting *Law,* 113 F.3d at 785).

¶ 13 The intent of the statute of limitations at issue in the Securities Act is identical to our jurisprudence on the intent of the statute of limitations for fraud and the discovery rule. *McCain v. Combined Commc'ns Corp. of Okla., Inc.,* 1998 OK 94, ¶ 8, 975 P.2d 865, 867 ("Fraud is deemed to have been discovered when, in the exercise of reasonable diligence, it could have or should have been discovered."); *Digital Design Grp.,* 2001 OK 21, ¶ 17, 24 P.3d at 839. We agree with the uniform act's intent and hold it to apply to Section 1–509(J)(2) of the Securities Act.[11] And the parallelism of the statute of limitations for a claim of misrepresentation under the Securities Act with the statute of limitations for common law fraud establishes an important consideration for the discovery of facts of misrepresentation. Implicit within discovery of the facts for a claim of misrepresentation is the Oklahoma Pleading Code's requirement that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake be stated with particularity." 12 O.S.2011, § 2009(B). As a practical matter, a plaintiff would have to discover particular facts relating to the fraud or misrepresentation or risk having his or her case dismissed—those particular facts require more detail than those required for a negligence cause of action.

■ ¶ 14 We now turn to whether the defendants submitted sufficient evidentiary material to establish that Horton had discovered or in the exercise of reasonable diligence should have discovered the facts of the misrepresentation more than two years prior to filing suit. The defendants presented the district court with six material facts; Horton admitted each one. The evidentiary material showed that 1) Horton wrote a check for the bond on September 18, 2007; 2) the bond was issued on October 1, 2007; 3) a few days after she wrote her check, Horton received a call from the Commission telling her it was investigating the defendants and it suspected fraud; 4) in the months that followed her purchase of the bond, she "tried hard" in getting her money back from the defendants and worked with the Commission; 5) Horton filed a proof of claim with the federal bankruptcy court overseeing the bankruptcy proceedings of Life Fund 5.1, L.L.C.; and 6) her proof of claim contained a three-page handwritten letter detailing her claim against the defendants and the debtor. The defendants moved for summary judgment, so we examine these facts in the light most favorable to Horton. *Jennings v. Badgett,* 2010 OK 7, ¶ 4, 230 P.3d 861, 864.

¶ 15 The accrual date of Horton's cause of action is the day the defendants sold her a security by means of misrepresentation. The statute of limitations for her cause of action began to run when she discovered or in the exercise of reasonable diligence should have discovered the facts to bring her claim in a court of law. To sustain summary judgment, the defendants had to establish when Horton knew or should have known that the defendants sold her a bond through misrepresentations. From the evidentiary material, this Court cannot ascertain when Horton discovered or should have discovered the misrepresentations because reasonable people could reach different conclusions thereon.

¶ 16 The defendants contend that the statute of limitations started to run when Horton first requested the return of her money from

---

11. We note that the Legislature also created a statute of repose which Section 1–509(J)(2)'s statute of limitations operates within. After five years of the violation's accrual, a plaintiff is barred from bringing a cause of action. 71 O.S.Supp.2003, § 1–509(J)(2) ("A person may not obtain relief … unless the action is instituted within … five (5) years after such violation."). As Horton was well within the five-year bar, we do not address this issue here.

the defendants in September of 2007.[12] But the only evidentiary material to support the defendants' argument that Horton knew of her claim is a call made by the Commission to Horton about the defendants' possible involvement with fraud.[13] Under the defendants' theory, only 26 months passed from the date she knew or should have discovered the misrepresentations—two months more than the statute of limitations would allow. The undisputed facts only establish that Horton grew concerned about her purchase. Under the defendants' argument, Horton should have been able to walk into the courthouse and file her cause of action on the day she asked for the return of her money. It is in dispute that Horton had sufficient detail to allege misrepresentations when she made her request as we view these facts in a light most favorable to her. In those two months, we do not know what Horton knew or should have learned from her discussions with the Commission. We do not know what Horton uncovered after her purchase. The defendants failed to submit any evidentiary material to show what a person in Horton's position should have learned. It is the duty of the defendant to establish when Horton knew or should have discovered her claim; a court cannot use conjecture to determine it. The defendants failed to meet that duty in their motion for summary judgment.

¶ 17 Summary judgment can only be granted by a court where 1) there is no genuine issue as to any material fact and 2) the movant is entitled to judgment as a matter of law. 12 O.S.2011, § 2056(C). With nothing more than Horton's concerns, a court cannot pinpoint when Horton discovered or should have discovered the facts of the misrepresentation. The point when the statute of limitations began to run is in dispute; therefore, the defendants are not entitled to judgment as a matter of law for Horton's claim of misrepresentation in the sale of securities under the Securities Act.

## B.  Common Law Fraud

¶ 18 We apply the same general rules to Horton's claim for common law fraud. We must first establish an accrual date for her claim. Section 95 of Title 12 of the Oklahoma Statutes states the accrual date for fraud: "[A]n action for relief on the ground of fraud" is limited to two years, but "the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." 12 O.S.2011, § 95(A)(3). A claim for fraud accrues when a person discovers the fraud. A party discovers fraud when he or she ascertains each element of the claim. *See Consol. Grain*, 2009 OK 14, ¶ 9, 212 P.3d at 1171. Horton pled actual and constructive fraud. This Court has defined actual fraud as "the intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person" and defined constructive fraud as "a breach of a legal duty or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive or actual dishonesty of purpose." *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 12, 308 P.3d 1041, 1046.

¶ 19 A party's accrual date occurs when the party discovers the fraud and has sufficient detail to plead the claim because pleading fraud requires a higher level of factual detail than a simple negligence claim. *See* 12 O.S.2011, § 2009(B). The defendants failed to submit sufficient evidentiary material to establish an undisputed accrual date. As discussed with Horton's Securities Act claim, the evidentiary material on summary judgment does not establish when she knew or should have discovered the facts of her claim for fraud. Horton could not have filed a cause of action for fraud with merely her concerns of the defendants' conduct. And the defendants failed to submit evidentiary material to establish what Horton should

---

**12.**  It is unclear whether the defendants argue that Horton had actual knowledge of the misrepresentation at this point or should have had knowledge. In the defendants' motion for summary judgment, they argue she had knowledge, but then contradict this position in their reply brief during the summary judgment proceedings.

**13.**  The defendants failed to establish whether Horton knew or should have known that the Commission was investigating her dealings with the defendants or investigating other unrelated dealings. As we view the facts in a light most favorable to Horton, our view is the latter.

have discovered in the months after her purchase. To agree with the defendants' position would require the Court to infer as to Horton's knowledge; we refuse to make those assumptions and change the way we view facts in a light most favorable of the nonmovant. *See Jennings*, 2010 OK 7, ¶ 4, 230 P.3d at 864. It was error for the district court to rule that the statute of limitations for Horton's claim of fraud had run by the time she filed her petition in district court.

## C. A Stockbroker's Fiduciary Duty, Negligence, and Gross Negligence

¶ 20 We turn to the final two counts Horton has brought before this Court. Our general rules apply similarly to both counts, but first we address whether a stockbroker owes a fiduciary duty to a client. A claim for breach of fiduciary duty arises in negligence, but raises the duty of care based upon a special relationship. Plaintiff contends that a stockbroker has a *per se* fiduciary duty to a client, relying on *MidAmerica Federal Savings & Loan Ass'n v. Shearson/American Express, Inc.*, 886 F.2d 1249 (10th Cir.1989), and *Roberson v. PaineWebber, Inc.*, 2000 OK CIV APP 17, ¶¶ 10–11, 998 P.2d 193, 198–99. There are two problems with this contention: first, there is no allegation that the defendants were stockbrokers; and second, this Court has never imposed a *per se* fiduciary duty on a stockbroker or a person selling bonds. Rather, this Court has held that the establishment of a fiduciary duty and the extent of the duty are fact specific in claims such as those before us now. *See Sellers v. Sellers*, 1967 OK 34, ¶ 21, 428 P.2d 230, 236.

¶ 21 The law regarding a fiduciary relationship is well settled. Fiduciary or confidential relationship has a broad meaning that includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another. *Id.* ¶¶ 21–22, 428 P.2d at 236. Such a relationship exists when one person acquires influence over another such that the influenced allows the influencer to substitute his or her will for the influenced's own. *Id.* ¶ 22, 428 P.2d at 236. The confidence's source is of no consequence. *Id.* In most instances, the question of a fiduciary relationship is for a trier of fact. *Id.; Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶ 44, 188 P.3d 158, 174. Here, Horton alleged multiple meetings with the defendants that led her to place her trust in them. Whether the defendants owed Horton a fiduciary duty is a question of fact.

¶ 22 For any negligence claim, including breach of fiduciary duty, a claim accrues when a party ascertains each element of his or her claim. *See Consol. Grain*, 2009 OK 14, ¶ 9, 212 P.3d at 1171. The statute of limitations then runs for two years. 12 O.S.2011, § 95(A)(3).[14] For a breach of a fiduciary duty, the Court has made "clear that the statute of limitations begins to run on a trust beneficiary's claim when it learns it has suffered damage that might be the trustee's fault." *Smith v. Baptist Found. of Okla.*, 2002 OK 57, ¶ 7, 50 P.3d 1132, 1137.[15] It is a question of fact of when the breach was "discovered or should have been unearthed with the exercise of ordinary diligence" which depends "on the surrounding circumstances, the relationship of the parties, and all other elements peculiar to the cause." *See id.* ¶ 8, 50 P.3d at 1137–38. Other than a heightened duty of care, breach of fiduciary

---

**14.** Plaintiff contends that the statute of limitations has not begun to run on her breach of fiduciary duty claim and will not do so until the defendants either inform her of their wrongdoing or terminate the relationship, relying on *Ludey v. Pure Oil Co.*, 1931 OK 527, 11 P.2d 102, and *Becker v. State ex rel. Dep't of Pub. Welfare*, 1957 OK 102, 312 P.2d 935. We have rejected this same argument in *Mud Trans, Inc. v. Foster–Dickenson & Co.*, 1993 OK 94, 856 P.2d 282, and *Smith v. Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 7, 50 P.3d 1132, 1137.

**15.** An instructive case is *Mud Trans, Inc.*, where the Court determined that the statute of limitations began to run on the plaintiff's claim when the plaintiff learned that some of the representations were false. 1993 OK 94, ¶ 16, 856 P.2d at 285–86. The facts in *Mud Trans, Inc.* are similar to the allegations in the case before us now. The defendant had enticed the plaintiff to invest in what the Internal Revenue Service (IRS) considered a sham and the IRS had rejected losses suffered from investments in the sham to be taken as a tax deduction. *Id.* The defendant knew of the IRS ruling but did not share the information with the plaintiff. *Id.*

duty is identical to negligence and gross negligence.[16]

¶23 Horton's breach of fiduciary duty, negligence, and gross negligence claims accrued when the defendants made false statements to induce her to purchase the bond. And just as with the other claims, there is a glaring issue of when Horton knew or should have discovered her claims for negligence and gross negligence. The defendants failed to submit evidentiary material to establish when Horton knew or should have discovered the elements of her tort claims. We do not know what Horton discovered or should have discovered in the months that followed her purchase of the bond. We have previously required evidentiary material to establish when a plaintiff knew or should have known in the exercise of reasonable diligence that he or she had a cause of action. *Redwine*, 1983 OK 55, ¶2, 679 P.2d at 1294.[17] That evidentiary material is missing here.

¶24 Horton would not have needed to discover the level of factual detail that she did for her claims of fraud and misrepresentation, and the statute of limitations for her claims for breach of fiduciary duty, negligence, and gross negligence could have begun to run much earlier than her fraud and misrepresentation claims. But we cannot interject this Court's assumptions into the evidentiary material presented at summary judgment. The defendants provided no evidentiary material beyond the phone call Horton received from the Commission. That call would not have been enough to file a petition in district court on that day for her tort claims, so it cannot begin the running of the statute of limitations. What we do not know is what occurred in the months that followed the phone call, and on summary judgment, we will not assume those facts. That duty is on the defendant to submit evidentiary material, and here they failed to establish when Horton knew or should have discovered the elements of her claims for breach of fiduciary duty, negligence, and gross negligence.

¶25 In all probability, all of Horton's claims did not begin to run at the same time because of the different levels of factual detail needed to discover the claims. But each of her claims deserves specific attention as to when the tolling of the statute of limitations stopped and the limitations period began to run. Without evidentiary material, that is a question of fact for the jury. The district court erred in granting summary judgment for the defendants on Horton's claims for breach of fiduciary duty, negligence, and gross negligence.

**D. Life Fund 5.1, L.L.C.'s Bankruptcy Stay**

¶26 Finally, Horton argues that the bankruptcy proceedings of Life Fund 5.1, L.L.C. tolled the statutes of limitations on all of her claims against the defendants. This argument fails as Horton does not provide any evidentiary material to connect the party in bankruptcy and the defendants or point this Court to sufficient legal authority or convincing argument for the proposition that the automatic stay in the federal bankruptcy proceeding precluded her from filing her claims against the defendants personally in the state district court.

¶27 Horton's only legal position is found in *McGee v. Kirby*, 1941 OK 326, 118 P.2d 199, but *McGee* is not helpful to Horton here.[18] While the United States Code does establish

---

16. A negligence claim consists of four elements: "(1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) an injury, and (4) causation." *Jennings*, 2010 OK 7, ¶12, 230 P.3d at 865. Gross negligence merely modifies the element of breach of duty and is statutorily defined as the "want of slight care and diligence." 25 O.S.2011, § 6.

17. "Upon making inquiry of the Chief Medical Examiner of the State of Oklahoma, [the plaintiff] received a letter from the Examiner dated February 16, 1978, setting forth the true cause of death, the letter being her first knowledge of the circumstances of her husband's death." *Id.*

18. Horton quotes the following rule from *McGee:*

It is a well-settled rule of law that "whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right." *Id.* ¶5, 118 P.2d at 200 (citing *Johnson v. Johnson*, 1938 OK 194, 77 P.2d 745). Horton fails to identify any "paramount authority" that prevented her from bringing suit.

an automatic stay and time extensions for the debtor filing for bankruptcy protection,[19] Horton fails to demonstrate how the automatic stay mandated by Section 362 of Title 11 of the United States Code prevented her from bringing suit in the state district court. United States circuit courts of appeals have recognized a limited exception to the general rule that a bankruptcy stay is inapplicable to claims against non-debtor third parties,[20] but we have no facts in the evidentiary material that establish even a limited connection between Life Fund 5.1, L.L.C. and the defendants. Therefore, we reject Horton's argument here because she failed to provide any evidentiary material to support her position, but she is free to pursue it in the district court.

## V. CONCLUSION

¶ 28 The district court erred in granting the defendants' motion for summary judgment on Horton's claims for misrepresentation in the sale of securities under the Securities Act, fraud, breach of fiduciary duty, negligence, and gross negligence. The defendants failed to submit sufficient evidentiary material in their motion for summary judgment to establish when Horton knew or should have discovered with reasonable diligence each of her claims. Therefore, the dates she discovered or should have discovered the elements of her claims are still questions of fact. Nothing about our decision today changes our jurisprudence on accrual dates, statute of limitations, or the discovery rule. It would be a grave mistake to read its holdings as such. Applying our long-standing precedent to the meager amount of facts supplied by the defendants establishes that whether Horton knew or should have discov-

ered the elements of her claim more than two years prior to her filing her lawsuit are still questions of fact. We vacate the opinion of the Court of Civil Appeals and remand this appeal to the district court for proceedings consistent with this Court's opinion.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; REMANDED WITH INSTRUCTIONS.**

REIF, C.J.; COMBS, V.C.J.; and KAUGER, WATT, EDMONDSON, TAYLOR, COLBERT, and GURICH, JJ., concur.

WINCHESTER, J., dissent.

---

19. 11 U.S.C. § 362; *id.* § 108.

20. The general rule has long been followed by our sister courts. *See, e.g., Fountain Sand & Gravel Co. v. Chilton Constr. Co.,* 40 Colo.App. 363, 578 P.2d 664, 665 (1978) ("[I]n an action on a surety bond, the principal is not an indispensable party, and thus the principal's bankruptcy does not toll the statute of limitations on an action against the surety."); *Cumberland Metals, Inc. v. Ky. Ins. Guar. Ass'n,* 801 S.W.2d 339 (Ky.Ct.App.1990). Federal courts of appeals have recognized a limited exception to this general rule, articulating that the protections of a

bankruptcy stay may extend to non-debtor third parties under "unusual circumstances" if a "situation arises when 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.' " *In re Dow Corning Corp.,* 86 F.3d 482, 493 (6th Cir.1996) (quoting *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986)); *see Okla. Federated Gold & Numismatics, Inc. v. Blodgett,* 24 F.3d 136 · (10th Cir.1994).